TONY WEST
    Assistant Attorney General
JOHN TYLER
    Assistant Branch Director
KIMBERLY L. HERB
    Illinois Bar No. 6296725
    Trial Attorney
    Civil Division, Federal Programs Branch
    U.S. Department of Justice
    P.O. Box 883
    Washington, D.C.  20044
    Telephone: (202) 305-8356
    Facsimile:  (202) 616-8470

Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>    Defendants. | Case No. CV 09-5640 SI<br><br>Noticed Motion Date and Time:<br>January 20, 2012<br>9:00 A.M<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT** |

In this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff Electronic Frontier Foundation ("EFF" or "Plaintiff") contends that Defendants – U.S. Department of Justice components the Criminal Division ("CRM") and the Federal Bureau of Investigation ("FBI"); and the Department of Homeland Security ("DHS") and its components the U.S. Secret Service ("USSS") and Immigration and Customs Enforcement ("ICE"), collectively "Defendants" – have failed to meet their FOIA obligations. First, EFF argues that Defendants have inappropriately withheld responsive information.[1] EFF also contends that ICE has failed to conduct an adequate search for potentially responsive information.

## I. Defendants Have Properly Withheld Information Under Exemption 7(E).

Plaintiff challenges Defendants' assertion of Exemption 7(E) on the grounds that (1) Defendants have failed to adequately substantiate claims of harm related to the release of the withheld information, (2) the withholdings concern techniques and procedures that are already publicly known, and (3) Defendants have not provided sufficiently detailed declarations as to why the disclosure of information would reveal law enforcement techniques and procedures. As an initial matter, EFF misstates the standard applicable in this case. EFF contends that "Defendants must support their circumvention claims with specific descriptions of the withheld information and 'substantial' evidence of credible testimony." (Dkt. 56 at 5.) On the contrary, courts in this Circuit clearly have stated that "[t]he government's burden is easier to satisfy under Exemption 7, than it is for other exemptions." *Council for Am.-Islamic Relations, Cal. v. FBI*, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010) (citing *Rosenfeld v. DOJ*, 57 F.3d 803, 808 (9th Cir. 1995)). "In the Ninth Circuit, law enforcement agencies such as the FBI are accorded 'special deference' in an Exemption 7 determination." *Id.* (citing *Binion v. DOJ*, 695 F.2d 1189, 1193 (9th Cir. 1983)). As a result, agencies with a clear law enforcement mandate need "'establish only a rational nexus between its law enforcement duties and the document for which Exemption 7 is claimed.'" *Id.* (quoting *Binion*, 695 F.2d at 1194). Indeed, "an agency with a clear law enforcement purpose . . .

---

[1] EFF also argues that Defendants' *Vaughn* indices are deficient because they fail to contain sufficient information substantiating the redactions. (Dkt. 56 at 21.) For the reasons that follow, Defendants' *Vaughn* indices are sufficient and adequately support their claimed withholdings.

1  need only be held to a minimal showing that the activity which generated the documents was
2  related to the agency's function." *Dunaway v. Webster*, 519 F. Supp. 1059, 1076 (N.D. Cal.
3  1981). In this case, Defendants are all law enforcement agencies with a clear law enforcement
4  mandate – a point that was asserted in Defendants' motion and not countered in Plaintiff's
5  opposition. (Dkt. 55 at 16 ("[T]here is no doubt that the FBI, Criminal Division, USSS, DHS,
6  and ICE have clear law enforcement mandates.").)

7  Plaintiff also contends that Defendants' withholdings are inappropriate because they relate
8  to "law enforcement techniques or procedures that are routine or well-known to the public," and
9  therefore there is no risk of circumvention of the law. (Dkt. 56 at 6.) For instance, EFF outlines
10 certain techniques – such as monitoring social networking websites for criminal activity and the
11 creation of fake profiles for the observation of criminal activity – that it believes are well- and
12 publicly-known. (*Id.* at 7.) Plaintiff's argument, however, fails because it rests on the faulty
13 assumption that Defendants' withholdings are limited to what is publicly-known.

14 While Defendants may have revealed publicly information related to its use of social
15 media in relation to law enforcement investigations, Defendants have not revealed operational
16 details about how exactly those techniques are used and applied to social media websites. The
17 withheld information is more detailed and, if released, could reveal the operational use of law
18 enforcement methods and procedures, resulting in risk of circumvention of the law. "Courts have
19 held Exemption 7(E) applies even when the identity of the techniques has been disclosed, but the
20 manner and circumstances of the techniques are not generally known, or the disclosure of
21 additional details could reduce their effectiveness." *Council for Am.-Islamic Relations*, 749 F.
22 Supp. 2d at 1123 (citing *Bowen v. FDA*, 925 F.2d 1225, 1228-29 (9th Cir. 1991)). Indeed, courts
23 have frequently upheld Exemption 7(E) withholdings when the identity of the techniques have
24 been disclosed, but the manner and circumstances of the techniques are not generally known, or
25 the disclosure of the details could reduce or nullify their effectiveness. *See, e.g., Muslim*
26 *Advocates v. DOJ*, --- F. Supp. 2d ----, No. 09-1754, 2011 WL 5439085, at *9 (D.D.C. Nov. 10,
27 2011) ("Although some information regarding the FBI's use of the particular techniques and
28 procedures . . . may be known, there is no principle . . . that requires an agency to release all

1  details concerning its techniques simply because some aspects of them are known to the public.")
2  (citation and quotation omitted); *Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (rejecting
3  plaintiff's argument that information regarding particular procedures witnessed by the plaintiff
4  and others could no longer be withheld); *Asian Law Caucus v. DHS*, No. 08-00842, 2008 WL
5  5047839, at *4 (N.D. Cal. Nov. 24, 2008) ("Knowing about the general existence of government
6  watchlists does not make further detailed information about the watchlists routine and generally
7  known."); *Unidad Latina En Accion v. DHS*, 253 F.R.D. 44, 52-53 (D. Conn. 2008) ("While the
8  public generally knows that the Government uses surveillance techniques to aid in its
9  investigations, the details, scope, and timing of those techniques are not necessarily well-known
10 to the public."); *Maguire v. Mawn*, No. 02 Civ. 2164, 2004 WL 1124673, at *3 (S.D.N.Y. May
11 19, 2004) ("Although the public may know that banks often employ bait money, the public does
12 not know whether and how a specific bank employs bait money."); *Blanton v. DOJ*, 63 F. Supp.
13 2d 35, 49-50 (D.D.C. 1995) (allowing withholding of polygraph information under 7(E) because
14 public does not know specific polygraph procedures and techniques).

15       Finally, Defendants have provided declarations explaining why the disclosure of the
16 withheld information would reveal law enforcement techniques and procedures. Defendants'
17 declarations are entitled to a presumption of good faith by this Court. *See Safecard Servs., Inc. v.*
18 *SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Plaintiff's disagreement with the declarations is not
19 sufficient to undermine the deference to which Defendants are entitled.

20       **A.**     **DHS and ICE Properly Withheld Information Under Exemption 7(E).**

21       As discussed in Defendants' motion, DHS withheld a single document on the basis of
22 Exemption 7(E). (Dkt. 55-24 at No. 33.) ICE has a clear law enforcement mandate, which
23 Plaintiff has not challenged. The withheld document has a clear nexus to that law enforcement
24 mandate – it is an internal agency handbook designed to guide special agents in their
25 investigations and includes, in particular, information related to search and consent. (*Id.*) It
26 describes the techniques and procedures those agents use to advance their investigations, and
27 release would enable would-be offenders to tailor their conduct so as to avoid detection and
28 circumvent the law. (*Id.*) As with the other Exemption 7(E) withholdings in this case, DHS's

NO. C 09-5640 SI                                                          3
DEFS.' REPLY BR. IN SUPP. OF DEFS.' MOT. FOR SUMM. J. & IN OPP'N TO PL.'S CROSS MOT. FOR SUMM. J.

assertion of Exemption 7(E) is designed to protect the particulars associated with search and consent as applied to social media.

ICE also withheld five documents pursuant to Exemption 7(E). All of these documents are clearly related to ICE's role in investigating and enforcing federal immigration law. Furthermore, release of these documents would disclose techniques and procedures used by ICE to conduct investigations, thereby enabling individuals to circumvent the law and avoid detection.

### B. FBI Properly Withheld Information Under Exemption 7(E).

Case law consistently holds that the FBI has a clear law enforcement mandate, and thus the FBI only need establish that its 7(E) withholdings have a rational nexus to that mandate. *Council for Am.-Islamic Relations*, 749 F. Supp. 2d at 1117. Also, even EFF acknowledges that many of the withholdings challenged here relate to how publicly-known techniques are applied operationally in online investigations. (Dkt. 56 at 12.) EFF nevertheless challenges the FBI's withholdings on the basis that the "FBI presents no evidence or qualified testimony to support its argument that disclosure could lead to circumvention." (*Id.*) Plaintiff cites to a single case to support that proposition – an unpublished decision, *Gerstein v. DOJ*, No. C-03-04893, 2005 U.S. Dist. LEXIS 41276, at *41 (N.D. Cal. Sept. 30, 2005), that is inapposite here.

As an initial matter, the *Gerstein* opinion's reference to expert testimony is contained in dicta. In *Gerstein*, the Court noted that the government agency was not seeking to withhold the fact that it used "delayed-notice warrants," a practice that the Court described as "far from secret." 2005 U.S. Dist. LEXIS at *39. Rather, the government was attempting to prevent disclosure of "a statistical distribution by" the government agency of the use of delayed-notice warrants. The Court rejected the government's articulated basis for the withholding, noting that (1) the sample size involved in the statistical distribution was too small to provide predictive value and, (2) that there was no evidence that "delayed-notice warrants are particularly feared or effective" as a law enforcement procedure or technique. It was only after noting this conclusion that the Court remarked that the government declarant "had no special expertise in criminology or criminal psychology." *Id.* at *41. This single remark hardly supports the notion that agencies must provide expert testimony.

1  Furthermore, even if *Gerstein* could be construed as Plaintiff contends, this holding would
2  be limited to instances where there was no evidence that the withheld information was used as a
3  law enforcement technique. Here, in contrast, the FBI has provided written declarations that the
4  withholdings not only come within the FBI's law enforcement mandate, but involve law
5  enforcement techniques and procedures that could result in circumvention of the law if revealed.
6  (*See, e.g.*, Dkt. 55-17 at p. 77 (stating that redactions concern "investigative techniques and/or
7  guidelines for law enforcement investigations" and that disclosure "could reasonably be expected
8  to risk circumvention of the law").) Given the standard applied in this circuit that "law
9  enforcement agencies such as the FBI are accorded 'special deference' in an Exemption 7
10 determination," *Council for Am.-Islamic Relations,* 749 F. Supp. 2d at 1117 (citing *Rosenfeld*, 57
11 F.3d at 808), this is all that the FBI need establish.

12 Additionally, EFF argues that the FBI cannot withhold information that has the "force and
13 effect of law." (Dkt. 56 at 14.) Plaintiff contends that the case of *Gordon v. FBI*, 388 F. Supp. 2d
14 1028 (N.D. Cal. 2005), is instructive. (*Id.*) *Gordon*, however, concerned "a legal standard that
15 regulated the agency's dealings with members of the public." *Id.* In contrast, the documents that
16 EFF cites to in relation to this argument do not rise to the level of being legal standards having the
17 force and effect of law and governing relations with the public. For instance, EFF argues that the
18 document available at FBI Soc. Net. 42-54 contains guidelines for the use of an undisclosed
19 investigative technique. The FBI *Vaughn* Index, however, makes clear that the document relates
20 to "a potential online focus of law enforcement investigations." (Dkt. 55-17 at p. 60.) The
21 identification of a *potential* focus cannot be construed as the application of a policy having the
22 force and effect of law. (*See also id.* pp. 92-93.) EFF also cites to FBI Soc. Net 79-80. As
23 discussed below with regard to Exemption 5, this email does not contain policy with the force and
24 effect of law, as it invites comments and suggestions on a proposal and notes that a policy has yet
25 to be finalized. (*Id.* at pp. 95-96.)

26 **C.  USSS Properly Withheld Information Under Exemption 7(E).**

27 The USSS's withholdings on the basis of Exemption 7(E) are appropriate. As discussed
28 in Defendants' motion, the USSS has a clear law enforcement mandate aimed at preventing harm

to its protectees. *U.S. News & World Report v. Dep't of the Treasury*, No. 84–2303, 1986 U.S. Dist. LEXIS 27634, at *5 (D.D.C. Mar. 26, 1986) (stating that while "[t]he Secret Service is unique in that its law enforcement efforts are geared primarily towards prevention rather than apprehension," there "can be no doubt that they are directly related to the agency's statutory mandate"). The twenty-one documents containing withholdings under Exemption 7(E) all have a rational nexus to USSS's protective law enforcement mandate and relate to identifying, analyzing, and investigating threats to USSS protectees. For instance, Document 1 contains "[i]nformation regarding a technique, not generally known to the public, utilized in identifying, analyzing, and investigating threats against Secret Service protectees." (Dkt. 55-16, Ex. G at p. 1.) As a result, USSS's assertion that the release of information from these documents would risk circumvention of the law is entitled to deference from this Court.

**D.  CRM Properly Withheld Information Under Exemption 7(E).**

Recently, CRM conducted a renewed review of its withholdings, resulting in a supplemental release of documents on December 15, 2011. (Ellis Supp. Decl. ¶ 3.) CRM determined that Items 3, 4, 10, 12, and 13 of its original *Vaughn* index could be released in their entirety. (*Id.*) Items 3 and 4 were two search warrant affidavit templates; item 10 was a PowerPoint presentation from the Minnesota Joint Analysis Center; and items 12 and 13 were articles from SEARCH, The National Consortium for Justice Information and Statistics. Because CRM released these documents in their entirety, Plaintiff now has received all of the relief it requested. Accordingly, the issues presented in Plaintiff's opposition with respect to these documents are moot, and they will not be otherwise addressed here.

The only CRM Exemption 7(E) withholdings that remain at issue in this case are contained in *Vaughn* Index Items 8, 9, and 11.[2] As discussed in the supplemental declaration of Kristin Ellis, Items 8 and 11 "consist[] of guidance about both investigative and prosecutive techniques developed or modified for child exploitation offenses committed in on-line groups and on social networking websites." (Ellis Decl. ¶ 6.) Item 9 also relates to "forensic techniques and

---

[2] CRM also recently reviewed these documents and released additional material from items 8, 9, and 11. (Ellis Decl. ¶ 3.)

1 undercover procedures developed/adapted for conducting child exploitation investigations in the
2 social networking environment." (*Id.* ¶ 7.) These documents have a clear nexus to CRM's law
3 enforcement mandate related to child exploitation. *United States v. C.R.*, --- F. Supp. 2d ----, No.
4 09-CR-155, 2011 WL 1901645, at *58 (E.D.N.Y. May 16, 2011) (discussing the Criminal
5 Division's enforcement efforts related to child exploitation). Furthermore, CRM is seeking to
6 protect the "details and particulars of law enforcements' use of these websites." (Ellis Decl. ¶ 8.)
7 Thus, the documents were properly withheld on the basis of Exemption 7(E).

## II. Defendants Have Properly Withheld Information Under Exemption 5.

Plaintiff challenges withholdings under Exemption 5 by ICE, the FBI, and USSS, all of which have been properly asserted. Plaintiff challenges withholdings by the FBI and ICE on the basis that internal emails between attorneys and their clients reflect the "neutral, objective analysis" of agency regulations, "are practically binding," and "reflect recitations of agency policy, rather than the give and take of legal counseling." (Dkt. 56 at 16.) In so doing, however, EFF misconstrues the documents and withholdings at issue.

Plaintiff challenges ICE's application of Exemption 5 to Item 3 on its *Vaughn* index. Initially, it is worth noting that ICE asserted both the attorney-client and deliberative process privileges to withhold this information. EFF, however, has not challenged ICE's withholding on the basis of the deliberative process privilege, and thus ICE's withholding can be upheld on that basis alone. Furthermore, a review of Item 3 makes clear that ICE appropriately applied the attorney-client privilege.[3] The email exchange relates to a question posed to ICE attorneys regarding the legality of using administrative subpoena power to obtain information from a social media website, and there are two redactions under Exemption 5. (Dkt. 55-26 at DHS ICE 2010000029.) In the first redaction, an attorney expressed a concern about whether the subpoena power can be applied to the situation, (*id.* at DHS ICE 2010000028), and thus the attorney clearly was not offering a binding recitation of agency policy. The second redaction involves the discussion of whether ICE's administrative subpoena power can be applied in a specific context.

---

[3] The DHS/ICE *Vaughn* index mistakenly includes an assertion of the attorney-work product privilege for Item 3; ICE does not assert this privilege for Item 3.

1  (*Id.* at DHS ICE 2010000031.) Thus, unlike an instance where a document may provide a
2  "neutral, objective" recitation of application of agency regulations, the redacted information in
3  this instance relates to a discussion of *whether* agency policy can be applied in a new context.
4  This is precisely the sort of information protected by Exemption 5. As noted by the Supreme
5  Court, "Exemption 5, properly construed, calls for . . . the withholding of all papers which reflect
6  the agency's group thinking in the process of working out its policy and determining what its law
7  shall be." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (citation omitted).
8        EFF also challenges a number of Exemption 5 withholdings by the FBI on the ground that
9  it too has improperly withheld documents reciting "agency policy."[4] A review of the documents
10  at issue, however, once again demonstrates that the FBI is protecting the give-and-take of the
11  attorney-client consultation process. For instance, in FBI Soc. Net. 58, the FBI withheld
12  information from an email in which a client sought an opinion from FBI counsel on a proposal.
13  (Dkt. 55-20 at Soc. Net. 58.) The discussion between attorney and client relates to how a policy
14  should be applied to a proposed course of conduct, considers issues that will follow from the
15  proposal, and invites the sharing of concerns, all activities that clearly demonstrate legal
16  counseling rather than a recitation of policy. *Id.*; *see also id.* at Soc. Net. 63-64, 76-77, 84-87.
17  Similarly, FBI Soc. Net. 70 recounts a question that came up during the course of client
18  responsibilities and invited the sharing of thoughts on how policy would apply to that situation;
19  rather than offer a recitation of clear, established policy, the attorney attempted to analogize the
20  question to more established situations to determine how to resolve the issue. *Id.* at 70; *see also*
21  *id.* at Soc. Net. 40-41 (also analogizing a situation in response to a question of policy). This too is
22  a classic example of legal counseling and reflects group thinking during the course of arriving at
23  agency policy. As a third example, EFF challenges FBI withholdings on the basis of Exemption
24  5 on Soc. Net 126-129, however, that email chain makes clear that the FBI *lacks* guidance on the

---

[4] EFF indicates that it seeks to challenge FBI withholdings to FBI Soc. Net. 10-12, 25-28, 55-56, 88-94, and 96. (Dkt. No. 56 at 15 n.7.) The FBI, however, has not withheld information on those pages on the basis of Exemption 5. (Hardy Decl. ¶ 51 n.14.)

1  issue and that resolution of the issue "sounds like a good question."[5] (Dkt. 55-21 at Soc. Net.
2  126.) Finally, the FBI withheld information in FBI Soc. Net. 78-80. (Dkt. 55-20 at Soc. Net. 78-
3  80.) This document, however, is not a final opinion or statement of policy, as the email chain
4  requests "additions or suggestions" on the guidance and notes that the guidance is interim "until
5  we finalize something." (*Id.* at Soc. Net. 80.)

6  Finally, EFF challenges the withholding of information from one USSS document under
7  Exemption 5. EFF maintains that the document is post-decisional because it "reviews the
8  effectiveness of a recently purchased system." (Dkt. 56 at 18.) This statement misconstrues
9  USSS's assertion of the privilege, as the *Vaughn* index makes clear that the withheld material
10 contains "opinions and *recommendations* . . . regarding the funding and functionality of a system
11 used to identify threats" to USSS protectees. (Dkt. 55-16, Ex. G at p. 5 (emphasis added).) The
12 material clearly relates to whether and to what extent the USSS should fund this system in the
13 future given its functionality, and thus the document is clearly pre-decisional. The USSS has
14 appropriately withheld information on the basis of Exemption 5.

15 **III. USSS Withdraws Its Assertion of Exemption 4**

16 USSS withheld information from four cost proposals that contain "proprietary and
17 confidential company pricing information," a contract containing "price analysis of cost data
18 provided by outside contractor," and two contracts containing "proprietary and confidential
19 company commercial and financial information." (*Id.* at pp. 6-8, 10-12.) Plaintiff argues that
20 USSS has improperly withheld this information because "contractors are required to submit
21 financial information to an agency to secure a government contract," and thus there is no risk that
22 the agency will be prevented from obtaining such information in the future. (Dkt. 56 at 20.)
23 USSS withdraws its assertion of Exemption 4 to protect information contained in these
24 documents. It notes, however, that no information was withheld from these documents solely on
25 the basis of Exemption 4; USSS also withheld the information in full based on Exemption 7(E)

---

26  [5] EFF also challenges the FBI's withholding of Exemption 5 information in emails on FBI
27  Soc. Net 150-56. However, the sole Exemption 5 redaction to this set of emails expressly states
    that it seeks information related to specific "questions" regarding the application of policy. The
28  posing of a series of questions can hardly be construed as the recitation of legal policy.

and in part on the basis of Exemptions 6 and 7(C), and it rests on those assertions.

### IV. ICE's Search Was Adequate.

While EFF challenges the adequacy of ICE's search for responsive records, it has not identified any search terms that ICE should, but did not, employ.[6] ICE searched using broad search terms, such as "social media," "social networking," "social network(s)," internet use for law enforcement investigations," "policy on internet use," "facebook," "twitter," "myspace," and "flickr." (Dkt. 55 at 10.) The fact that other agencies produced more voluminous documents is irrelevant, as there is no set of search terms that would be more likely to capture responsive information, including guidelines from websites like Facebook and Myspace, than search terms that included "facebook" and "myspace." *See Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) ("The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.").

EFF also erroneously asserts that ICE's search was inadequate because it failed to locate information from its investigative agents. Plaintiff's FOIA request sought "policies, guidelines, and memoranda" outlining the agency's position on various issues related to the search of social media websites. Because such files relate to agency-wide policies, ICE's search was reasonably focused on offices that set and administered policy that could potentially apply to social networking websites. Additionally, in conversations with counsel, EFF clarified that it was not seeking information from individual investigative files. (Dkt. 55 at 4 n.4.) Thus, there would be no need to search the records of all ICE law enforcement agents. Instead, ICE identified the offices most likely to contain responsive information and, outside of arguing that additional investigative agents should have conducted searches, EFF has not identified any other offices that might have responsive information.

### CONCLUSION

For the reasons stated above, and in Defendants' motion, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment.

---

[6] In their opposition, EFF did not challenge the adequacy of the FBI's, USSS's, or DHS's searches, and thus appears to concede adequacy.

DATED: December 16, 2011  Respectfully submitted,

TONY WEST
Assistant Attorney General
JOHN TYLER
Assistant Branch Director


 */s/ Kimberly L. Herb*
Kimberly L. Herb
Trial Attorney
United Stated Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Telephone: (202) 305-8356
Facsimile: (202) 616-8470
E-mail: Kimberly.L.Herb@usdoj.gov

Attorneys for Defendants

NO. C 09-5640 SI
DEFS.' REPLY BR. IN SUPP. OF DEFS.' MOT. FOR SUMM. J. & IN OPP'N TO PL.'S CROSS MOT. FOR SUMM. J.

11