1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   ELECTRONIC FRONTIER FOUNDATION,          No. C 09-05640 SI

9              Plaintiff,                     **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'**
10     v.                                     **MOTION FOR SUMMARY JUDGMENT;
                                              DENYING PLAINTIFF'S MOTION FOR**
11  DEPARTMENT OF DEFENSE, et al.,            **SUMMARY JUDGMENT**

12             Defendants.
    _____/

13

14          Currently before the Court are the parties' cross-motions for summary judgment in this Freedom

15  of Information Act case.  For the reasons discussed below, the Court GRANTS in part and DENIES in

16  part defendants' motion for summary judgment, DENIES plaintiff's motion for summary judgment, and

17  requires the FBI and ICE to provide plaintiffs with supplemental declarations.

18

19                              **BACKGROUND**

20          This case arises from a series of related Freedom of Information Act (FOIA) requests submitted

21  in late 2009 by plaintiff Electronic Frontier Foundation ("EFF") to various federal agencies involved

22  in law enforcement activities, and from amended FOIA requests submitted by EFF in May 2010.  *See*

23  Complaint Case No. 09-5640, ¶ 18; *see also* Complaint Case No. 10-5526, ¶ 14.[1]  The current

24  defendants are the Federal Bureau of Investigation ("FBI"), a component of the U.S. Department of

25  Justice; and the Department of Homeland Security ("DHS") and its components – United States Secret

26

27  _____

28          [1]  On January 24, 2011, the Court ordered Case Nos. 09-5640 and 10-5526 consolidated, since
    both cases arise from identical FOIA requests.  *See* Case No. 09-5640 Docket No. 41.

*United States District Court*
*For the Northern District of California*

Service ("USSS") and Immigration and Customs Enforcement ("ICE").[2]

The FOIA requests seek documents, including agency guidelines, manuals and procedures, regarding agency use of social-networking sites in their investigations and to gather data.  Complaint Case No. 10-5526, ¶ 15; Complaint Case No. 09-5640, ¶ 19.  The agencies failed to provide responses to the FOIA requests, so plaintiff filed suit.  Following the inception of litigation, the agencies produced several hundreds of pages of documents, which EFF admits provide meaningful insight into some of the agencies' use of social media to collect data and monitor individuals.  *See* EFF Motion at 1:24-2:1 (Docket No. 56).  However, EFF complains that the agencies have continued to withhold significant documents, or portions of documents, without sufficient justification under FOIA.  *Id.*, 2:1-5.

The government moved for summary judgment, contending that it has complied with its duties under FOIA.  EFF filed a cross-motion for summary judgment contending that the defendants have impermissibly withheld documents under FOIA Exemption 7(E), which covers information compiled for law enforcement purposes and when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law"; and under FOIA Exemption 5, which covers attorney-client and deliberative documents.[3] Plaintiff also contends that ICE did not conduct an adequate search.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

---

[2] The Department of Justice's Criminal Division ("CRM") is also a defendant. However, during the oral argument on these motions, EFF stated it would no longer challenge the withholdings made by CRM.  *See* Docket No. 64 at 1.

[3] EFF does not challenge information withheld under Exemptions 1, 2, 6, 7C and 7(D).  EFF Motion at 2, n.1.  EFF also challenged USSS' withholding of information under FOIA Exemption 4, which covers trade secrets and commercial or financial information. However, in reply, the government dropped its assertion of Exemption 4, so that dispute is moot.  For the remaining challenged exemptions, EFF lists the Bates numbers of the documents whose withholdings EFF challenges in footnotes in its brief.  EFF does not address each withholding with specificity in its motion papers or in a declaration.  Because EFF does not provide the Court with arguments as to why *each* of its "challenged" redactions or withholdings is inappropriate, the Court will generally confine its analysis to the documents EFF discusses in its briefs.

and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party.  *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim.  *See National Wildlife Federation v. United States Forest Service*, 861 F.2d 114 (9th Cir. 1988).  The government agency bears the ultimate burden of proving that a particular document falls within one of the nine statutory exceptions to the disclosure requirement.  *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).  The government may submit affidavits to satisfy its burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 742) (9th Cir. 1980)).  The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

**United States District Court**
For the Northern District of California

**DISCUSSION**

**I.    Withholding Under Exemption 7(E)**

**A.    Standard for Withholding under 7(E)**

Exemption 7(E) covers, "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  In the Ninth Circuit, there are two requirements the government must prove in order to withhold information under this exemption.  First, the government must demonstrate the withheld information was "compiled for law enforcement" purposes.  With respect to this "threshold requirement," the government need only establish a "rational nexus" between "'enforcement of a federal law and the document for which'" the exemption is claimed. *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 748 (9th Cir. 1980)).  EFF does not contest that the information withheld by the government under 7(E) meets this threshold.  EFF Reply at 2:27-3:1.

In order to meet the second requirement, the government must show, by evidence admissible on summary judgment, that release of the withheld information "would reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The government appears to argue that in order to satisfy its burden as to the second requirement, it need only meet the "rational nexus" test.  *See* Govt Reply at 1:14-2:3; *id*. at 4:8-9.  However, the Ninth Circuit's decision in *Rosenthal* makes it clear that the "rational nexus" standard applies only to Exemption 7's "threshold requirement," that the withheld information was compiled for a law enforcement purpose; it does not apply to the substantive requirement that the government demonstrate its release would reasonably lead to circumvention. *Compare Rosenthal*, 57 F.3d at 808 *with id.*, at 815; *see also FBI v. Abramson*, 456 U.S. 615, 622 (1982) (discussing two part test).  As to the second test, the government must demonstrate, by detailed affidavit or other evidence, that release would reasonably risk circumvention of the law. *See, e.g., Feshbach v. SEC*, 5 F. Supp. 2d 774, 787 (N.D. Cal. 1997) (rejecting withholding under Exemption 7(E) where government failed to "provide non-conclusory reasons why disclosure of each category of withheld

4

documents would risk circumvention of the law.").

EFF contends that the government has failed to submit sufficient evidence to show a substantial risk of circumvention if the withheld information was released, in particular because the investigative techniques at issue – use of various forms of social media to engage and monitor targets – has been widely reported and disclosed to the public.  EFF submits evidence that the public has grown to understand, through news media reports, court documents, and documents released as a result of this litigation, that law enforcement agencies have used social networks in their law enforcement activities. *See, e.g.*, Declaration of Jennifer Lynch, ¶ 7 and exhibits thereto (articles about DOJ and FBI's use of social media networks).  EFF argues that these publicly available sources' description of various techniques used in investigations – including monitoring social network sites, creating fake profiles and using pretext to gather information from site users, using location information maintained in the sites to track users, using sites to compile available information for later "mining,"  and using "sniffer" software to track a suspect's activity on the internet – means that the actual "techniques" and agency guidance contained in the withheld information in this case are already well known to the public.  EFF Motion at 7-9.  EFF also contends that even if the government were able to withhold documents regarding non-routine and non-disclosed techniques for using social media networks in law enforcement activities under 7(E), the agencies have failed to demonstrate that non-exempt, segregable information contained in those documents cannot be released.  *See, e.g., Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979) (the doctrine of segregability applies to all exemptions under FOIA).

In the Ninth Circuit, "Exemption 7(E) only exempts investigative techniques not generally known to the public."  *Rosenfeld*, 57 F.3d at 815.  Similarly, "routine" techniques that "would leap to the mind of the most simpleminded investigator," cannot be shielded from disclosure.  *Id.*  However, the government may withhold detailed information regarding a publicly known technique where the public disclosure did not provide "a technical analysis of the techniques and procedures used to conduct law enforcement investigations."  *See Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228-1229 (9th Cir. 1991); *see also Asian Law Caucus v. United States Dep't of Homeland Sec.*, 2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008) ("The public does not already have routine and general knowledge

5

about any investigative techniques relating to watchlists. The public merely knows about the existence of watchlists. Knowing about the general existence of government watchlists does not make further detailed information about the watchlists routine and generally known.").

### B.      Application of the 7(E) Standard

#### 1.      ICE Withholding

One part of one document has been withheld by ICE under 7(E). ICE explains that this document is part of a handbook for ICE's Compliance Enforcement Unit "that details the process used by Special Agents in CEU investigations and, particularly, related to searches and consent." *See* Docket No. 55-24 at Doc. 33 (Holzer *Vaughn[4]* Index). ICE asserts, through a *Vaughn* Index submitted by DHS' Director for Disclosure and FOIA Operations James Holzer, that the document contains "descriptions of law enforcement investigative procedures," the release of which could reasonably be expected to risk circumvention of the law." *Id.* ICE has also withheld information from four documents under 7(E). *See* Holzer *Vaughn* Index, Docket No. 55-24, Docs. 1-2, 4-5. These documents include two memoranda entitled "Minimum Standards on Compliance Enforcement Case Closures" and "HSI Internet Exploitation for Gang Investigations." Documents Nos. 1-2. Document 4 is a chapter entitled "Field Investigation and Interview" from the ICE HSI Compliance Enforcement Investigations Handbook. Document 5 is a presentation slide entitled "Internet Exploitation."[5]

Holzer declares generally for each of these documents, through the *Vaughn* index, that the information in these documents was withheld under 7(E) to protect disclosure of "internal agency instructions and guidance" for law enforcement officers concerning the investigation and interview of persons subject to investigation. Holzer also asserts that disclosure of these internal instructions and guidance "would reveal both a law enforcement technique and an internal agency investigative practice

---

[4] "*Vaughn* index" comes from the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), where the court rejected an agency's conclusory affidavit and required the agency to provide detailed support for its claimed FOIA exemptions. *Id.*, 484 F.2d at 826-28.

[5] EFF challenges ICE's redaction of information from ICE Document No. 3 under Exemption 7(E). *See* Pl. Supp. Brief [Docket No. 64] at 1:14. However, Exemption 7(E) was not asserted as a basis for withholding information from Document No. 3. *See* Docket No. 55-24 at pg. 3.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    and could adversely affect future investigations and operations by exposing the details and type of

2    information the agency uses in the course of investigation" and disclosure could permit people seeking

3    to circumvent the law to alter their behavior to "further conceal criminal activity and otherwise counter

4    operational and investigative actions taken by ICE." These assertions are reiterated in the Declaration

5    of Ryan Law, a Deputy FOIA Office for DHS/ICE. Docket No. 55-25, ¶¶ 48-49. Mr. Law also declares

6    that he reviewed each withheld record line-by-line and that any segregable information was released.

7    *Id.*, ¶ 52. Mr. Law's declaration attaches as exhibits copies of the documents at issue, showing where

8    and how information has been redacted under 7(E).

9          EFF counters that because law enforcement's monitoring of social networks for criminal activity

10   is so well known and "routine," documents regarding those techniques cannot be withheld. EFF Motion

11   at 7. EFF specifically addresses only two of the ICE documents. With respect to document 2 ("Internet

12   Exploitation of Gang Investigations"), EFF argues that law enforcement agencies' use of online tools has

13   been well documented and relies on an article from Government Computer News generally discussing

14   how "federal, state and local agencies" are using online resources to identify and track suspected

15   criminals. Lynch Decl., Ex. 15. However, EFF has not demonstrated that ICE's position – that detailed

16   technical analyses of their agencies' use of the internet have not been disclosed – is incorrect or otherwise

17   without support. The same is true for the other document addressed by EFF, document 5, a presentation

18   on using the internet for investigations. EFF has not explained – for example through expert testimony

19   regarding the operation of various social networking sites – how the publicly-known fact that ICE uses

20   social networking sites for its gang investigations by itself means that the detailed instructions and

21   guidance the agency internally uses for those activities are either well-known or can be fully anticipated

22   by the public.

23         The Court finds that the Holtz and Law declarations provide sufficiently detailed evidence that

24   DHS/ICE has appropriately withheld the information at issue and undertaken a thorough segregability

25   analysis.

26

27

28

**2.     FBI Withholding**

EFF challenges each of the FBI's withholdings of information under 7(E), except for the withholdings/redactions on FBI Bates Nos. 10-12, 25-28, portions of Bates Nos. 123-25 that discuss "limitations when investigating a particular social networking site," and any redactions of email addresses or internal websites. *See* Docket No. 55-17 at pg 30 n. 17 (listing all pages of FBI production where 7(E) invoked); *see also* Docket No. 64 at 1:15-17. The FBI describes the justification for the 7(E) withholdings through the Declaration of David M. Hardy. Docket No. 55-17 at pgs. 30-33. Mr. Hardy explains that under the category of "sensitive techniques and analytical procedures for criminal investigations," two types of information have been withheld: (1) "procedures and techniques used, or under discussion for use" by the FBI for investigation of cyber crime and (2) the "descriptive titles" of certain units. Mr. Hardy asserts that disclosure of the existence and function of the units "may serve to warn those involved in cyber crimes of where the FBI is concentrating" its resources. Hardy Decl., ¶ 62. Mr. Hardy also asserts that disclosure of information regarding procedures, techniques and unit titles could jeopardize ongoing criminal investigations and future investigations and allow circumvention of the law. *Id*. Mr. Hardy explains that the types of documents from which information has been withheld include email chains, internal memoranda, instructional slides, a newsletter, a draft of a speech that was not followed verbatim, and the FBI Intelligence Information Report (IIR) Handbook. *Id*. ¶ 63. Mr. Hardy's declaration is supported by a narrative description of the redactions made on each page, *see* Docket No. 55-17 at pgs. 34-189, and copies of the redacted documents have also been provided. Hardy Decl., Exs. G, I & J.

EFF does not address *each* instance of withheld information specifically. Instead, EFF generally argues that information regarding procedures, techniques and "areas of focus" of the FBI's use of social networking sites in its investigations are all "well known or routine" and as such must be released. EFF also complains that the FBI has not submitted sufficiently detailed explanations justifying the withholdings, and the FBI's declarant does not attempt to demonstrate that the withheld information is not publicly known or routine. Finally, EFF argues that the FBI's "guidelines," "policy documents" and "standards" for using social networks in investigations are the agency's "working law" and cannot be withheld under Exemption 7(E).

The Court has reviewed the Hardy Declaration, the narrative description of the withheld information, as well as the copies of the redacted documents.  The Court will address each category of information withheld by the FBI under 7(E) in turn.

a.   <u>Information regarding FBI analytical tools</u>.  *See, e.g.*, SOC NETWORK - 1, 22.

FBI argues that disclosure of the use of "analytical tools," including the use of specific software programs or tools and a discussion of the information collected and tracked by those tools, could reasonably be expected to allow the circumvention of the law.  The Court finds that even if the general fact that the FBI is using social networking sites in its investigations is publicly known, there is no evidence that the programs and specific tools used for those investigations have been disclosed.  Moreover, it is obvious that the disclosure of this type of information could reasonably be expected to risk circumvention of the law.  Information regarding possible or actual FBI analytical tools, therefore, has been appropriately withheld.

b.   <u>Techniques and procedures</u>.  *See, e.g.*, SOC NETWORK 30, 31, 35, 36, 39, 40, 42, 43, 56, 63-64, 81.

The FBI argues that information about potential and actual techniques and procedures used by the FBI for its online networking investigations is properly withheld because disclosure of that information could reasonably be expected to risk circumvention of the law.  *See, e.g.*, SOC NETWORK - 39 ("discussion of, or results gleaned from, sensitive intelligence techniques"); SOC NETWORK 42 ("sensitive investigative techniques and procedures for law enforcement investigations"); SOC NETWORK 56 (redaction from a slide show regarding "procedure used during investigations").

The FBI is not entitled to withhold the name or description of investigative "techniques" used if those techniques are routine and generally known.  *See, e.g., Rosenfeld*, 57 F.3d at 815.  However, the FBI is entitled to withhold "technical analysis" of the techniques and procedures used to conduct law enforcement investigations that are not generally known.  *See, e.g., Asian Law Caucus v. United States Dep't of Homeland Sec.*, 2008 U.S. Dist. LEXIS 98344 at *11.  The Court cannot determine whether the FBI has drawn the appropriate line given the generality of Hardy's declaration.  For example, the

United States District Court
For the Northern District of California

redactions may well be appropriate if the information goes beyond the fact of the FBI's use of social networking sites for investigations (which has been disclosed) and goes into undisclosed "technical analysis of the techniques." Therefore, the FBI needs to supplement its declaration to address this issue for redactions of "techniques" and "procedures." After further review, if the FBI intends to maintain the 7(E) designation, the FBI must declare that, for each specific redaction of a technique or procedure, that the information withheld goes beyond a generally known technique or procedure. The supplemental declaration must also provide additional information as to how, for each specific withholding, disclosure could reasonably be expected to harm the FBI's efforts.

        c.      <u>Potential online focus</u>. *See, e.g.*, SOC NETWORK - 29-33, 35-38, 40, 42, 43, 78-80, 81.

Many of the FBI's redactions concern information that discloses the "potential online focus" of the FBI's investigations. The Court finds that these withholdings have not been adequately justified. Hardy's declaration does not address whether the "potential areas of online focus" redacted are already publicly known or obvious, or give the Court any explanation as to how disclosure of each different item could reasonably be expected to harm the FBI's efforts. That is not to say that particular redactions could not be justified. For example, redaction of the name of specialized forums within a particular social networking site – *e.g.*, specific "fan" pages in Facebook – may well be justified. However, redaction of the mention of "Facebook" may not be justified depending on the context in which it is used in light of the FBI's acknowledgment that it is using social networking sites in its investigations. The FBI shall submit a supplemental declaration stating, for each item of "potential online focus" withheld, that the information is not generally known or routine. The supplemental declaration shall also provide additional explanation as to the specific context of each redaction and the nature of the harm expected if disclosed.

        d.      <u>FBI unit titles</u>. *See, e.g.*, SOC NETWORK - 2, 63-64, 65, 78-80.

The FBI has repeatedly redacted the name of units in the FBI, arguing that disclosure of the name of the unit itself would necessarily disclose an investigative technique or disclose the function and focus of a particular unit. *See, e.g.*, SOC NETWORK 65 (would disclose the name of a unit in the FBI

potentially involved in investigating individuals using social networking sites, and the name also reveals an investigative technique); SOC NETWORK 78-80 (would disclose an acronym for a Unit potentially involved in investigating through social networking sites, and the name also reveals an investigative technique).

The Court finds that disclosure of the unit name matters only if the technique disclosed by disclosing the unit name is not obvious or generally known. *See supra* subsection b.  As such, the FBI's supplemental declaration must address, for each redaction of a unit name, that the technique or procedure the agency seeks to protect is not obvious or generally known.  The Hardy declaration also does not adequately support the FBI's argument that disclosing the focus of a unit – by disclosing its name – may risk circumvention of the law because it would disclose where the FBI is concentrating its law enforcement efforts. For example, the FBI has not provided a sufficient explanation as to why disclosure of the fact that a particular unit is focusing on one area means that other units are not focusing on other areas.  In sum, the connection between disclosure of this limited information and risk of circumvention has not been adequately explained.  The supplemental declaration should provide further explanation of the alleged risk from disclosing the focus of a particular unit. *See, e.g., Gerstein v. United States DOJ*, 2005 U.S. Dist. LEXIS 41276, *39-43 (N.D. Cal. Sept. 30, 2005) (rejecting withholding under 7(E) based on assertion that disclosing which jurisdictions used delayed-notification warrants would "reveal to all criminals which jurisdictions are 'soft'" on crime).

e.   <u>FBI divisions and location of field offices and task forces</u>.  *See, e.g.*, SOC NETWORK - 21, 30, 31, 35, 36, 38, 44, 78-80, 81.

The FBI argues that disclosure of FBI divisions involved in investigations with social networking sites, as well as the physical location of field offices and task forces involved in the same, creates a risk of circumvention because it discloses how the FBI is using its resources in these investigations and also the potential geographical focus of those resources. *See, e.g.*, SOC NETWORK 21 (redacting information from a draft speech, which was not disclosed in the speech, regarding specific location of FBI gang task force); SOC NETWORK 30 (reference to FBI field office, thereby indicating a location of that is a focus of FBI's investigative attention); SOC NETWORK 31 (redacting reference to a Division

as information shows which Divisions in FBI may be particularly interested in investigating social networking sites, and in turn the focus of their investigations); SOC NETWORK 78-80 (redacting name and location of FBI field office, because information indicates a "location that could be the focus of FBI investigative attention").

The FBI has not adequately explained why disclosure of these types of information would reasonably risk circumvention of the law. The Court notes that disclosing that certain divisions are involved in or supervise the use of social networking sites in investigations does not disclose exactly how the FBI is expending its resources in this area. Similarly it is not readily apparent to the Court why disclosure of the physical location of a field office or task force involved with these investigations – which are focused on *online* activity – risks circumvention of the FBI's efforts. The FBI must provide a supplemental declaration providing further explanation or release the information to plaintiffs. *See, e.g., Gerstein v. United States DOJ*, 2005 U.S. Dist. LEXIS 41276, *39-43.

        f.     <u>Guidelines, protocols and standards</u>. *See, e.g.*, SOC NETWORK 57-58, 60-62, 78-80.

The FBI has withheld from release "guidelines" and "standards" regarding use of social networking sites, claiming that release would reasonably risk circumvention of the law. *See, e.g.*, SOC NETWORK 23 (redacting information from a draft speech, which was not disclosed in the speech given, regarding "legal protocol" approval process for certain investigative activities); SOC NETWORK 42-54 42-54 (guidelines for use of undisclosed investigative techniques); SOC NETWORK 57-58, 60-62 (redacted "guidelines" for law enforcement investigations, including examples of how "the policy" applies to social networking sites); SOC NETWORK 76-77 (redacting information regarding "guidelines" and "standards" for law enforcement investigations, including examples of application of policies); SOC NETWORK 123-25 (withholding document discussing enforcement strategies and limitations when investigating a particular social networking site in a specific area of cyber crime); SOC NETWORK 131 (withholding guidelines for undercover operations); SOC NETWORK 136-43 (withholding document discussing procedures on how to conduct IINI investigations with a focus on a particular social networking site); SOC NETWORK 216 (withholding guidelines for law enforcement

investigation); *but see* SOC NETWORK 78-80 (redaction of non-final guidance); SOC NETWORK 81 (redaction of "developing policy").

EFF argues the FBI cannot withhold guidelines and policies which have the force and effect of law or otherwise "regulate an agency's dealings with the public." EFF Motion at 14-15. EFF relies primarily on *Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005). In that case, the District Court found that the FBI had failed to adequately explain why disclosure of "the legal basis for detaining someone whose name appears on a watch list," and other no-fly aviation lists could be used to circumvent agency regulations. *Id*. at 1036-37. In *Gordon*, the issue decided by the Court was narrow and rested not on the FBI's admission that the documents at issue constituted agency guidelines or policies, but on the agency's failure to justify how disclosure of the "legal basis" for detaining people on watch lists would harm the agency's operations. The Court did not require the FBI to disclose the criteria used by the agency for placing people on the watch lists, nor did the Court require the agency to disclose procedures for raising or addressing problems with the watch lists– policies and standards that by their very nature could easily be used to circumvent the agency's enforcement efforts. The Court rejected plaintiffs' argument that the public's knowledge about watch lists in general and the public's substantial interest in the information withheld could trump the danger to law enforcement by its release. *Id*. at 1036. The "legal justification" for detaining people on the watch list, understandably, fell into a different category and the FBI's justification for its withholding was found to be insufficient.

EFF also relies on *PHE, Inc. v. Department of Justice*, 983 F.2d 248 (D.C. Cir. 1993). In that case the District of Columbia found that the FBI had improperly withheld large chunks of a "step by step analysis of the law" of obscenity. The Court found the FBI's affidavit failed to "explain why the agency could not release at least the portions of chapter 1 containing the discussion of search and seizure law and the digest of useful caselaw. Material like this is precisely the type of information appropriate for release under the FOIA." *Id*., 251-52. The Court also noted that disclosure of the obscenity case law at issue could, in fact, "lead to compliance with, rather than risk circumvention of, the law." *Id*. 252.[6]

---

[6] EFF reliance on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) is misplaced, as the portion of that opinion relied on by EFF regarding agency documents which "have the force and effect of law" dealt with Exemption 5, not 7(E). *See id.* at 153.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The specific documents EFF challenges here – guidelines for use of investigative techniques [SOC NETWORK 42-54]; standards for requesting user information from online services [SOC NETWORK 76-77]; guidelines for use of online services in investigations [SOC NETWORK 79-89] – appear to go to the heart of how and when the FBI is using social networking sites for its investigations and, as such, the risk of circumvention from disclosure is readily apparent.  In sum, the Court finds that even if these documents constitute the "policies" or "guidelines" used by the FBI in their law enforcement investigations they are not, thereby, subject to release.  Instead, the question – as in *Gordon* – is whether the FBI has demonstrated that their release would circumvent the purpose of the agency's efforts.  Given the nature of the information at issue – which can be determined by the names and titles of the documents, by the location of redactions, and in conjunction with the descriptions in the Hardy declaration and narrative description -- the Court finds that FBI has adequately demonstrated that disclosure would circumvent the agency's efforts.

### 3.    USSS Withholding

There are 13 documents or portions of documents withheld by the USSS under 7(E).  *See* Docket No. 55-15, ¶ 64.  Descriptions of the information withheld are provided through the Declaration and *Vaughn* Index of Craig W. Ulmer, Special Agent in Charge  Liaison Division and FOI and Privacy Acts Officer for the USSS.  Docket Nos. 55-15, at pgs. 19-20 & 55-16.  Mr. Ulmer also declares that no reasonably segregable non-exempt information on the documents has been withheld.  Ulmer Decl., ¶ 66.

EFF only specifically challenges one document withheld by the USSS, document 8 – which is a list of search terms used to detect threats against Secret Service protectees.  *See* Docket No. 55-16, at pg. 25 of 33. Ulmer describes the rationale for withholding this information as "information on a technique and procedure used in identifying potential threats against Secret Service protectees and conducting protective intelligence investigations."  *Id.*  In his declaration, Mr. Ulmer does not address these search terms directly, but indicates that release of "information on techniques utilized" and "information regarding systems and technology" would reveal techniques and methodologies used by the Secret Service that are not generally known and could circumvent their law enforcement functions.  Docket No. 55-15, ¶¶ 65-66.  Mr. Ulmer has also declared that a review of the withheld information and

those documents that have been withheld in full shows that no information can be segregated without releasing information properly withheld under FOIA.  *Id.*, ¶¶ 66-67.

The Court finds that Ulmer declaration and *Vaughn* index provide sufficiently detailed evidence that ICE has appropriately withheld the information at issue and undertaken a thorough segregability analysis.

In sum the Court finds that the Exemption 7(E) withholdings by ICE and USSS are appropriate and adequately justified.  The Court, however, finds that the FBI has failed to provide adequate justifications for withholding information regarding "techniques and procedures," information regarding the agency's "potential online focus," unit titles and FBI divisions and location of field offices and task forces.  Given the law enforcement context, the Court DENIES the cross motions for summary judgment as to Exemption 7(E), and instead requires the FBI to provide a supplemental declaration and *Vaughn* index addressing the deficiencies identified by the Court.[7]  The supplemental declaration and *Vaughn* index shall be provided to EFF within thirty (30) days of the date of this Order.  If the FBI cannot continue to withhold certain information based on the Court's rulings (*e.g.*, the FBI cannot declare that specific withheld information is not already publicly known or routine), that information shall be produced to EFF within thirty (30) days of the date of this Order.  EFF may, if the supplemental declaration and index are still deficient, file a renewed motion for summary judgment.

## II.    Withholding Under Exemption 5

Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Relevant to this case, the exemption has been interpreted to cover attorney-client information as well as "intra-agency" documents that are predecisional and, therefore, covered by the deliberative process privilege.

---

[7] EFF also complains that the FBI's declaration and *Vaughn* index do not address the FBI's withholding of several email attachments.  *See, e.g.,* SOC NETWORK 57-59, 78-80, 84-87, 126-29, 150-56, 218-23, 224-31, 232-39.  The supplemental declaration and index must address all attachments that are mentioned in the redacted emails, but not already produced or addressed in the Hardy Declaration and narrative description.

**A.     ICE Withholding**

EFF challenges ICE's use of Exemption 5 as to one document, document 3 – which is an email between ICE attorneys and ICE special agents concerning subpoena procedures for Facebook information. Mr. Holzer explains in the *Vaughn* index that this document was withheld because the email contains legal opinion and recommendations concerning a specific enforcement case. Docket No. 55-24 at pg 3-4 of 36. The *Vaughn* index explains that the attorney-client privilege is asserted because the intra-agency email was between ICE attorneys and agents regarding "any prohibition in using an ICE admin subpoena to obtain Facebook access." *Id.* ICE also asserts that the document is protected by the deliberative process privilege, as it (1) contains predecisional advice and opinion on how to proceed in an investigation and reflects the give and take associated with the seeking of legal counsel on the issue, and (2) disclosure would discourage the expression of candid opinions. *Id.* Mr. Law adds further details to justify the agency's withholding, explaining that the document is predecisional and deliberate, because it concerned legal advice regarding investigative techniques and procedures. Law Decl., Docket No. 55-25, ¶ 43. Mr. Law declares that while these communications were largely opinion, to the extent they contained factual information not covered by the deliberative process privilege, the facts are "inextricably intertwined" with deliberative material so that disclosure of the facts would compromise the confidentiality of the deliberative information. *Id.* Mr. Law also reasserts that the contents of the email are likewise covered by the attorney-client privilege because the purpose of the emails was to seek legal advice and counsel rendering advice. *Id.*, ¶ 46.

EFF counters that the email at issue does not actually involve giving or receiving legal advice, but instead, "neutral, objective analysis" of existing agency regulations applied to a specific factual context which falls outside of Exemption 5's protection. EFF Motion at 16 (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980)). EFF claims the withheld information falls within the *Coastal States* exception, because the word "procedures" is used in the description of the withheld information.[8] However, in reply the government provides additional detail regarding the

_____

[8] EFF also challenges the application of the attorney work-production doctrine to withhold this document under Exemption 5, but the government clarified in Reply that it did not intend to assert that doctrine as a basis for withholding.

16

1    information withheld, arguing that the first Exemption 5 redaction in the document at issue covers an

2    attorney's expression of concern whether the subpoena power can be applied to the particular situation,

3    and the second redaction concerns a discussion of whether ICE's administrative power can be applied

4    in a specific context. Govt Reply at 7. The government argues that in these circumstances the attorneys

5    were not providing "neutral, objective" advice about applying existing regulations to a specific context,

6    but were discussing whether existing policy can be applied in a new context. *Id.*, at 8.

7         Based on the showing of the government, the Court agrees that Exemption 5 is appropriately

8    applied to the portions of document 3 withheld from release. The fact that the email at issue concerned

9    "procedures" does not undercut the government's position that what was occurring were discussions

10   between attorneys and their clients of whether those procedures could be applied to a new and different

11   context, a situation covered by the attorney-client privilege under Exemption 5.

12

13        **B.      USSS Withholding**

14        EFF challenges USSS' withholding of one document, Document 11, under Exemption 5's

15   deliberate process privilege. EFF argues the withheld document – a nine page memorandum which

16   reviews the effectiveness of a purchased system to help the agency detect threats – is a postdecisional

17   document which cannot be withheld under Exemption 5. In order to qualify for withholding under

18   Exemption 5's deliberative process privilege, the agency must demonstrate that the withheld information

19   is both "predecisional" and "deliberative." *Assembly of California v. United States Dep't of Commerce*,

20   968 F.2d 916, 920 (9th Cir. 1992). A "predecisional" document is prepared in order to assist agency

21   decisionmakers and includes "recommendations, draft documents, proposals, suggestions, and other

22   subjective documents which reflect the personal opinions of the writer rather than the policy of the

23   agency." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A

24   document is "deliberative" if "disclosure of materials would expose an agency's decisionmaking process

25   in such a way as to discourage candid discussion within the agency and thereby undermine the agency's

26   ability to perform its functions." *Dudman Communications Corp. v. Department of Air Force*, 815 F.2d

27   1565, 1568 (D.C. Cir. 1987).

28        USSS justifies the withholding as a predecisional document discussing opinions regarding issues

1   relating to threat identification and operational response.  Ulmer *Vaughn* Index, ¶¶ 54-55.  Mr. Ulmer

2   declares that disclosure of the memorandum could discourage frank and open discussions on systems'

3   capabilities and limitations, and that chilling effect could harm the protective efforts of the Secret

4   Service.  *Id.*, ¶¶ 54-55.  More specifically, the document is described as a memorandum "providing a

5   justification for funding a system utilized in assisting in the protection of Secret Service protectees and

6   the investigation of threats directed towards protectees," and an analysis "providing opinions and

7   recommendations to agency management regarding the funding and functionality" of the system.  Docket

8   No. 55-16, Ex. G at 5.  The Court finds that an analysis providing "opinions and recommendations"

9   regarding funding and functionality of a system is appropriately withheld as predecisional and

10  deliberative.

11

12       **C.       FBI Withholding**

13       EFF challenges the withholding of numerous documents under the attorney-client privilege,

14  arguing that the documents at issue cannot be covered by the privilege because they do not involve

15  anyone giving or receiving legal advice, and instead appear to involve the application of established legal

16  standards.[9]  EFF argues that under *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, the

17  attorney client privilege must be narrowly construed to cover "'only those disclosures necessary to obtain

18  informed legal advice which might not have been made absent the privilege.'"  *Id.*, at 862-63 (quoting

19  *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  In the context of agency discussions, "neutral,

20  objective analyses of agency regulations" are not appropriately withheld, as those discussions "resemble,

21  in fact, question and answer guidelines which might be found in an agency manual."  *Id.*, at 863.  EFF

22  also relies on *Safeway, Inc. v. IRS*, 2006 U.S. Dist. LEXIS 81078 (N.D. Cal. 2006), where the district

23

24       [9] The exact Exemption 5 withholdings that EFF intends to challenge are unclear.  *Compare* EFF
     Motion at 15, n. 7 and EFF Supp. Brief at 1 (listing same set of Bates numbers) *with* EFF Motion at 16,
25   n.9 and EFF Motion at 17:2-20 (discussing additional sets of documents).  Moreover, a number of the
     documents identified by EFF as having challenged Exemption 5 withholdings, do not assert Exemption
26   5.  *See, e.g.*, SOC NETWORK 10-12, 25-28, 55-56, 88-94, and 96.  Accordingly, the Court will confine
     its analysis to the following documents:   SOC NETWORK 29-32; SOC NETWORK 33-34; SOC
27   NETWORK 35-38; SOC NETWORK 40-41; SOC NETWORK 42-47; SOC NETWORK 48-54; SOC
     NETWORK 57-59; SOC NETWORK 58; SOC NETWORK 63-65; SOC NETWORK 69-71; SOC
28   NETWORK 76-77; SOC NETWORK 78; SOC NETWORK 79-80; SOC NETWORK 84-87; SOC
     NETWORK 126-29; SOC NETWORK 150-56.

court held that "intra-agency discussion of how to apply established policy and law to the particular facts of Plaintiffs [IRS] audit," was not appropriately withheld under Exemption 5.  Finally, EFF relies on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), where the Supreme Court recognized that documents which describe the policies and standards implemented by an agency in its dealing with the public and, as such, have "the force and effect of law" cannot be withheld under Exemption 5.

The Court notes initially, that with respect to information that has been withheld under Exemption 5 but *also* under Exemption 7(E) as "guidelines, protocols and standards," the Court has found that the assertion of Exemption 7(E) for those documents is appropriate and the documents can be withheld whether or not Exemption 5 has been appropriately asserted.[10]

With respect to information in documents specifically challenged by EFF that are not described as final guidelines, protocols or standards, the Court finds that the redactions and withholdings made in SOC NETWORK 29 - 34, 35-38, 40-41, 42-47, 48-54, 63-65, 69-71, 78-80, 84-87, 126-29, 150-56 are appropriate.  In these documents the FBI has redacted information from email conversations from or to counsel, and withheld attached documents,  regarding "discussions" and questions as whether certain policies "apply" to new situations, "impressions," "corrections" and "changes" to prior guidance, "tentative" guidance, seeking input regarding "future" issues, and otherwise seeking legal advice that is not a "neutral" application of established policies.  As such, the information was appropriately withheld under Exemption 5.

In sum, the Court finds that the agencies have appropriately withheld information – and adequately justified those withholdings – under Exemption 5.  As such, the Court GRANTS the government's motion for summary judgment and DENIES plaintiff's motion as to Exemption 5.[11]

---

[10]   SOC NETWORK 57-59, the document attached to SOC NETWORK 58, and SOC NETWORK 76-77 all appear to concern policies and guidelines, as well as examples of their applications.  These documents could be considered the "working law" of the FBI and not covered by Exemption 5, but they are appropriately withheld under Exemption 7(E).

[11]   EFF also complains that the agencies have failed to show that they have released all reasonably segregable, non-exempt information. EFF Motion at 23-24. EFF complains, in particular, about the 22 documents withheld in full by USSS. EFF Motion at 24, n. 14; EFF Supp. Brief at 1. USSS' declarant, Craig W. Ulmer, states that he undertook a segregability review of all withheld information, and that if exempt information "were redacted from the pages withheld in their entirety, the only remaining information would be either meaningless or an essentially blank page." Ulmer Decl.,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### III.    Adequacy of Search Conducted by ICE

EFF contends that ICE did not conduct an adequate search.  An agency bears the burden to demonstrate that it has conducted an adequate search for responsive documents.  *Zemansky v. United States Environmental Protection Agency*, 767 F.2d 569, 571 (9th Cir. 1985). In determining the adequacy of the search,  "'the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.  In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id.*, quoting *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

EFF bases its inadequate search argument primarily on the fact that ICE, although the second largest law enforcement agency in the Country, failed to identify responsive documents of similar nature and in a similar quantity as the other defendants in this case.  EFF Motion at 22.  As one specific example, EFF notes that ICE produced only one third-party Law Enforcement Guide for the social media sites (*e.g.*, Facebook's Law Enforcement Guide), where other agencies produced guides from multiple sources.  *Id.*; *see also* EFF Supp Brief [Docket No. 64] at 2.  EFF also argues that: (1) ICE did not utilize reasonable search terms, pointing out that it did not list any search terms used by ICE Office of Principal Legal Advisor ("OPLA") and that the Office of Enforcement and Removal Operations ("ERO") used only two terms "social network" and "social media" for its search; and (2) ICE had employees search for responsive documents in their *own* computers and files, and not in unit or agency-wide systems.  EFF Reply at 10.  ICE responds through the Declaration of Ryan Law, a Deputy FOIA Office for DHS/ICE

---

¶¶ 66-67. The *Vaughn* Index attached to Ulmer's declaration describes each document withheld and the basis for the withholding, including an extensive discussion of the 22 documents withheld in full.  EFF, does not provide the Court with any specific reason why – given the nature of the withheld documents disclosed in the Index – USSS' segregability determinations were unreasonable.  Nonetheless, the Court has reviewed each of the descriptions of the 22 documents withheld in full – which deal mostly with the inception, review and procurement of a system used by USSS to detect threats, as well as lists of terms used to detect threats and websites – and finds no reason to conclude USSS' segregability determination was unreasonable.

[Docket No. 55-25], and the First Supplemental Declaration of Ryan Law. Docket No. 65-1.[12]

The Court finds that simply because ICE produced only one third-party Law Enforcement Guide (although ICE contends it produced three), does not mean ICE's search was inadequate. *See, e.g.*, *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). With respect to the search terms used by ERO, the supplemental Law Declaration explains that ERO determined that no documents were likely to be found within ERO, but if any were, they would likely be found in the Law Enforcement Service Center ("LESC"), which responds electronically to immigration status inquiries from law enforcement agencies. No documents were found by LESC, which admittedly used only two search terms. However, EFF provides no reasons as to *why* the limited search conducted by ERO – limited to only LESC and then limited by use of only two search terms because employees were prevented from accessing social networks for *all* purposes – was unreasonable. EFF does not argue that ERO components *other* than LESC should have been searched. EFF does not explain why, given the *actual work* conducted by LESC and the firewall prohibiting LESC employees from accessing social network sites for all purposes, the use of two search terms was unreasonable. EFF provides no reason for the Court to conclude that the search actually conducted by ERO was unreasonable.

With respect to OPLA, EFF complains that OPLA did not disclose what search terms were used. However, the Supplemental Law declaration discloses the eight search terms the two employees who might have been expected to have responsive documents actually used in their searches. Supp. Law Decl., ¶ 24. In its supplemental brief addressing the adequacy of ICE's search, EFF does not contend that

---

[12] EFF also initially complained that ICE tasked only eight special agents out of a total of 6,700 in the Office of Homeland Security Investigations to search for responsive agents. EFF Motion at 22. ICE responded generally that because the FOIA request sought "policies, guidelines and memoranda" regarding use of social networks, ICE reasonably limited its search to agents and offices that set administrative policy. Govt Reply at 10. EFF did not contest this issue in its reply or supplemental brief.

United States District Court
For the Northern District of California

the terms used by OPLA employees or individuals chosen to conduct those searches were unreasonable.[13]

The only remaining issue, therefore, is EFF's argument that because the ICE employees actually tasked with searching for responsive documents largely searched their own files, and not unit or agency-wide files, the search was inadequate. *See, e.g.*, Law Decl., ¶ 18 ("conducted searches of their computer and email files"); ¶ 20 ("conducted a manual review of her computer and email files"); ¶ 24 ("search of their computer and e-mail files"); ¶ 28 ("search of his computer and e-mail files");  Supp. Law Decl., ¶ 17 ("searches of their records for potentially responsive information").  The government did not address this arguments in its briefs.  The Law Declarations indicate that in three instances unit or agency-wide record systems were searched or considered for searching.  *See* Law Decl., ¶ 25 (Office of Executive Secretariat Information Management System); ¶¶ 34-35 (ICE Law Enforcement Fusion System Intelligence Records System); Supp. Law Decl., ¶ 11 (ERO's databases could not be searched using descriptive terms).  The Court cannot tell, however, whether ICE's search was reasonable in light of ICE's failure to address why certain employee searched only their own computer files, whether there are other unit or agency-wide record systems that exist that might contain responsive documents, and whether these systems were searched or were not searched because it was determined that they were unlikely to contain responsive records.

In light of this one deficiency, the Court DENIES the cross motions for summary judgment as to the adequacy of ICE's search.  ICE shall provide a further supplemental declaration addressing this issue. That supplemental declaration shall be provided to EFF within thirty (30) days of the date of this Order. EFF may, if the supplemental declaration is still deficient on the question of the reasonableness of ICE's search of unit and agency-wide records systems, file a renewed motion for summary judgment.

---

[13] EFF complains that the Supplemental Law Declaration did not address the search terms used by the six other ICE components. EFF Supp. Brief at 2.  However, EFF *did not* challenge the adequacy of the search terms used by those six other units in its motion or reply brief.  EFF cannot use the Supplemental Law Declaration to create a dispute on a ground it did not assert in its motion.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants' motion for summary judgment and DENIES in part plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: September 24, 2012

_____
SUSAN ILLSTON
United States District Judge